UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KHAFIZULLOKH
AKHMEDKHODZHAEV,

                Petitioner,

      v.

JULIO HERNANDEZ, *et al.*,

                Respondents.

Case No. C26-1436-MLP

ORDER

      Petitioner Khafizullokh Akhmedkhodzhaev, through counsel, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, arguing that his detention by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, has become indefinite. (Dkt. # 1.) He seeks immediate release and injunctive relief related to future redetention and third-country removal. (*Id.*) Respondents filed a timely return in response (dkt. # 5), supported by a sworn declaration from U.S. Department of Homeland Security ("DHS") Deportation Officer Karl Douglas (dkt. # 6) ("Douglas Decl."), and an unsworn declaration from their counsel, Lawrence Van Daley (dkt. # 7) ("Van Daley Decl."). Petitioner filed a traverse in reply (dkt. # 8), with an appended declaration from his counsel Olia Catala (dkt. # 8-1) ("Catala Decl.").

ORDER - 1

Having reviewed the parties' submissions and the governing law, the Court GRANTS in part the petition (dkt. # 1) and ORDERS that Petitioner be released from detention within twenty-four hours. Remaining requests for relief are addressed below.[1]

## I.      BACKGROUND

Petitioner is a native of Kyrgyzstan and a citizen of Russia, who last resided in Russia in 2015 when he was approximately 13 years old. (Dkt. # 1 at 4; Douglas Decl., ¶ 3.) He entered the United States on or about February 24, 2024, and applied for admission at the San Ysidro Port of Entry but was unable to produce a valid entry document. (Douglas Decl., ¶ 4.) Petitioner was charged as being removable under Immigration and Nationality Act ("INA") § 212(a)(7)(A)(i)(I) and scheduled to appear before an immigration judge on December 3, 2025. (*Id.* ¶ 5; Van Daley Decl., ¶ 2, Ex. 1 at 2.) Petitioner was thereafter released into the United States on parole. (Douglas Decl., ¶ 6.)

On March 3, 2025, Petitioner reported in person to the ICE Office of Enforcement and Removal Operations ("ERO") for a required check in, where he was taken into custody. (Douglas Decl., ¶ 8.) He was transported to the NWIPC, where he has remained detained since. (Dkt. # 1 at 4; Douglas Decl., ¶ 9.)

On September 29, 2025, an immigration judge ordered Petitioner removed to Russia. (Dkt. # 1 at 4.) Petitioner did not appeal the order of removal. The order of removal is not in the record, but the parties agree it became final on September 29, 2025. (*See* dkt. ## 1 at 8, 5 at 9; *see also* Douglas Decl., ¶ 9.)

On or around November 28, 2025, ERO received a valid Russian identity document for Petitioner. (Douglas Decl., ¶ 10.)

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 3.)

ORDER - 2

On December 10, 2025, ERO completed a travel document request ("TDR") package to be reviewed by ERO headquarters. (Douglas Decl., ¶ 10.) ERO headquarters requested additional information related to Petitioner's prior address in Russia, which Petitioner was unable to provide. (*Id.* ¶ 11.) Officer Douglas further asserts that Petitioner "indicated he would call his family members for that information." (*Id.*) On March 26, 2026, ERO again spoke with Petitioner about his prior address in Russia, but Petitioner did not provide it. (*Id.* ¶ 12.) Officer Douglas states ERO thereafter served Petitioner with a Warning for Failure to Depart. (*Id.*) The warning is not in the record.

On April 9, 2026, ERO submitted a revised TDR to ERO headquarters for review and subsequent submittal to the Russian consulate. (Douglas Decl., ¶ 14.)

On April 27, 2026, Petitioner filed the instant petition, seeking: (1) an order prohibiting his transfer "outside the jurisdiction of the Western District of Washington" without providing him and his counsel 48 hours' written notice; (2) immediate release from custody "on an Order of Supervision" ("OSUP") in compliance with federal law and regulations; (3) injunctive relief prohibiting the Government from redetaining him without first providing "adequate pre-deprivation notice and a meaningful hearing before a neutral decision-maker;" (4) injunctive relief prohibiting the Government from "attempting to remove him to any third-country without providing at least ten days' written notice and a meaningful opportunity to be heard in reopened removal proceedings;" (5) an award of reasonable costs and attorney's fees under the Equal Access to Justice Act; and (6) any other relief the Court deems just and proper. (Dkt. # 1 at 15-16.)

ORDER - 3

## II.    LEGAL STANDARDS

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner must prove by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

## III.    DISCUSSION

### A.    Petitioner's Detention Has Become Indefinite

The parties agree that Petitioner's order of removal is final, and that his detention is therefore governed under 8 U.S.C. § 1231(a)(6). (Dkt. ## 1 at 2; 5 at 1, 3.) The parties also agree that *Zadvydas* provides the appropriate test to guide the Court in deciding whether a noncitizen's post-final order detention has become effectively indefinite but disagree on whether it affords Petitioner relief here. (Dkt. ## 1 at 2, 5 at 1 (citing *Zadvydas v. Davis*, 533 U.S. 678 (2001)).) The Court agrees that Petitioner's detention falls under § 1231(a)(6) and that, for the following reasons, *Zadvydas* compels his release.

In *Zadvydas*, the Supreme Court construed 8 U.S.C. § 1231(a)(6) to authorize post-removal-period detention only for the period reasonably necessary to effect removal. 533 U.S. at 689, 699. The Court adopted a presumption that detention up to six months after the removal order becomes final is reasonable when it is related to effectuating removal. *Id.* at 701. "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If removal is not reasonably foreseeable, "continued detention is no longer authorized by statute." *Id.* at 699.

ORDER - 4

Petitioner is a noncitizen entitled to the protections of the Due Process Clause. *See Zadvydas*, 533 U.S. at 693. Respondents acknowledge that Petitioner has now been detained for approximately eight months since the immigration judge entered a final order of removal to Russia. (Dkt. # 5 at 6.) His continued detention is therefore beyond the six-month period *Zadvydas* identifies as "presumptively reasonable." 533 U.S. at 701.

Petitioner asserts that there is good reason to believe it is not significantly likely that he will be removed in the reasonably foreseeable future. (Dkt. # 1 at 9; *see Zadvydas*, 533 U.S. at 701.) First, he asserts the government has not effectuated his removal or identified a concrete timeline for doing so. (Dkt. # 1 at 9.) In addition, he argues ICE has not made progress in obtaining travel documents. (*Id.* at 10.) Further, ICE considers Russia to be uncooperative due to delays and refusals in issuing travel documents. (*Id.*, Ex. B.) Finally, the fact that Petitioner has not resided in Russia since childhood "presents further complications for identity verification and travel document issuance." (*Id.* at 10-11.)

Respondents argue this evidence does not satisfy Petitioner's burden under *Zadvydas*. (Dkt. # 5 at 6.) Respondents contend that, during Petitioner's detention, ERO has acted with "consistent diligence" by securing valid Russian identification documents and submitting TDR packages to the Russian consulate. (*Id.*) Respondents contend that "[a]ny delay beyond the ordinary timeline stems directly from Petitioner's own obstruction." (*Id.*) As evidence, Respondents point to Petitioner's "repeated refusal" to contact family members in Russia to obtain an address, despite his assurance that he would do so. (*Id.*) Petitioner's refusal, Respondents argue, caused the need for a revised travel document package and has "materially

ORDER - 5

delayed his removal." (*Id.*) Respondents cite to 8 U.S.C. § 1231(a)(1)(C),[2] *Pelich v. INS*, 329 F.3d 1057, 1060 (9th Cir. 2003), and *Lema v. INS*, 341 F.3d 853, 856-57 (9th Cir. 2003) for the proposition that a "[noncitizen's] refusal to cooperate with removal efforts undermines any claim that removal is not reasonably foreseeable and can itself extend the period of lawful detention." (*Id.*)

With the limited record, it is not clear whether Petitioner's failure to obtain a physical address was due to his noncooperation or rather a product of Petitioner's circumstances. While Respondents argue Petitioner *refused* to provide his address, the record merely provides that he was *unable*. (*Compare* dkt. # 5 at 6, *with* Douglas Decl., ¶ 11.) In *Pelich*, the noncitizen had "steadfastly refused to fill out a Polish passport application, which directly impede[d] Poland's ability to determine whether [petitioner] qualifie[d] for Polish travel documents." 329 F.3d at 1059. In addition, he provided "conflicting information regarding his name, his parents' name, his parents' birthplaces and residences, his birthplace, and his nationality." (*Id.*) Similarly, in *Lema*, the volitional nature of the noncitizen's noncompliance was more obvious:

> In the two years since Lema first applied for travel documents, Lema has not furnished the Ethiopian government or the INS with any new evidence (such as affidavits from family members) to support his claim of Ethiopian nationality. Lema has not filed a new request for travel documents. Lema has not attempted to contact the Ethiopian consulate. Lema has refused to comply with an INS request, made in April 2002, that he provide the INS with certain documents. If Lema were to cooperate with the INS to dispel the Ethiopian government's confusion over his nationality, the Ethiopian government might issue travel documents in the reasonably foreseeable future.

341 F.3d at 857.

---

[2] Title 8 U.S.C. § 1231(a)(1)(C) is entitled "Suspension of period" and provides: "The removal period shall be extended beyond a period of 90 days and the [noncitizen] may remain in detention during such extended period if the [noncitizen] fails or refuses to make timely application in good faith for travel or other documents necessary to the [noncitizen's] departure or conspires or acts to prevent the [noncitizen's] removal subject to an order of removal."

Here, the limited record regarding Petitioner's alleged obstruction appears markedly different compared to the conduct alleged in *Pelich* and *Lema.* The sole basis for alleging Petitioner to be uncooperative is that he agreed to contact family members in Russia to obtain an address but ultimately did not. (Dkt. # 5 at 6.) Respondents do not explain why they believe Petitioner had a Russian address to provide, notwithstanding the fact that he had not lived in Russia for over a decade. Nor do Respondents address the practical barriers for someone in Petitioner's position, such as whether and when detainees at the NWIPC have access to a telephone and whether they have international dialing capability. To the extent any of this information is provided on the warning served on Petitioner (*see* Douglas Decl., ¶ 12), that document is, again, not before the Court. Without more, the evidence does not support Respondents' conclusory assertion that Petitioner "refused to cooperate." (*See* dkt. # 5 at 6.)

Separately, it is not clear how Petitioner's conduct delayed his removal. Respondents contend that Petitioner's noncooperation in March 2026 impacted Russia's verification of Petitioner's identity or nationality. (Douglas Decl., ¶ 13.) But the record reflects that ERO received valid Russian identity documents in November 2025, four months earlier. (*See id.* ¶ 10.) Further, Respondents characterize the missing information as necessary for verification but ultimately acknowledge that ERO sent a complete TDR package for review. (*Id.* ¶¶ 13-14.) Respondents do not explain whether Petitioner eventually did provide the information or, if not, how ERO was able to send a completed TDR package, despite Petitioner's alleged noncooperation.

With the record before it, the Court is not convinced that Petitioner had "the keys to his freedom in his pocket" but for his alleged noncooperation. (*See* dkt. # 5 at 6 (citing *Pelich*, 329 F.3d at 1060).) At most, the record reflects that Petitioner was unable to provide an address for a

ORDER - 7

country in which he has not resided for over ten years. And, while that information may have been helpful, it does not appear to have been deliberately withheld by Petitioner, nor necessary for ERO to request travel documents. Therefore, the Court does not find that 8 U.S.C. § 1231(a)(1)(C) operates to extend Petitioner's detention period because of his alleged failure to cooperate. (*See* dkt. # 5 at 6.) The Court finds Petitioner has "provide[d] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

The burden therefore shifts to the government to "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. Respondents assert that they have done so "with concrete evidence of ongoing removal efforts." (Dkt. # 5 at 6.) Respondents assert they reasonably anticipate issuance of travel documents by the Russian consulate in the near future. (*Id.*) While the Court agrees that the record shows Respondents have taken steps to obtain travel documents, they have not put forth evidence showing when documents will issue or the subsequent timeline to effectuate them. The only evidence before the Court is that an application for travel documents is pending for a country the Government has recently characterized as uncooperative. (*See* dkt. # 1, Ex. B at 8.)

Further, the cover letter attached to Petitioner's April 8, 2026 TDR requests the Russian consulate issue the necessary documents within seven days of the request. (*See* Van Daley Decl., ¶ 2, Ex. 5 at 2.) It has now been over forty days since the request was sent with no evidence that the TDR was received, accepted, or processed. Respondents do not provide any additional information beyond generalized and conclusory assertions that travel documents will issue and Petitioner will be removed. (Douglas Decl., ¶ 15.)

ORDER - 8

In sum, the record shows Respondents have taken steps to secure travel documents and that there is a possibility Russia will accept Petitioner at some point. That is not the same as a significant likelihood that Petitioner will be accepted in the reasonably foreseeable future. *See Nguyen v. Scott*, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025) ("Courts in this circuit have regularly refused to find Respondents' burden met where Respondents have offered little more than generalizations regarding the likelihood that removal will occur.")

The Court therefore finds that Respondents have failed to rebut Petitioner's showing and accordingly grants the petition for writ of habeas corpus (dkt. # 1).

**B.      Requests for Injunctive Relief**

Federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). To obtain a permanent injunction, a party must show "some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). A party must demonstrate (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2008).

*1.      Future redetention*

Petitioner seeks injunctive relief prohibiting Respondents from redetaining him in the future without providing adequate notice and an opportunity to be heard before a neutral

ORDER - 9

decisionmaker. (Dkt. # 1 at 13, 15.) Respondents argue that Petitioner's request is premature because he has not been released and therefore, faces no risk of redetention. (Dkt. # 5 at 8.) In addition, Respondents argue that existing procedures under 8 C.F.R. §§ 241.4 and 241.13 provide adequate process by requiring "periodic reviews of a noncitizen's custody status" and giving noncitizens "the opportunity to submit evidence and arguments in support of release." (*Id.*)

Here, Petitioner does not challenge the manner in which Respondents took him into custody but argues that any future redetention would require a pre-deprivation hearing. (Dkt. # 1 at 13.) Petitioner is now subject to a final order of removal and Respondents have shown efforts are being made to secure travel documents. Petitioner does not meaningfully engage with the applicable regulations to show why they would be so deficient as applied to him such that *any* future redetention of Petitioner would therefore require pre-deprivation notice and a hearing before a neutral decisionmaker. Petitioner's request for injunctive relief related to future redetention is denied.

### 2. Third-country Removal

Finally, Petitioner seeks injunctive relief related to potential third-country removal. (Dkt. # 1 at 13-15.) Respondents argue that such relief would be improper for several reasons. (Dkt. # 5 at 9.) First, the government is not considering third-country removal. (*Id.*) Moreover, the immigration judge's order specifically directs removal to Russia, and all efforts have been directed toward effectuating Petitioner's removal to Russia. (*Id.*) Therefore, Respondents argue, Petitioner's request is speculative, unripe, and meritless. (*Id.* at 8.) Petitioner asserts the issue is ripe because DHS may ultimately seek removal to a third-country pursuant to 8 U.S.C. § 1231(b)(2). (Dkt. # 8 at 9.) Petitioner points to the fact that courts in this district have

ORDER - 10

recognized that DHS's third-country removal practices implicate due process concerns. (*See id.* and the cases cited therein.)

Petitioner has failed to show that he faces an imminent threat of irreparable injury related to third-country removal. There is no evidence that removal to Russia is impossible or that Respondents have abandoned efforts to remove Petitioner to Russia. Nor is there evidence that, should the government ultimately pursue third-country removal, the federal regulations would be so inadequate as they relate to Petitioner that a court order is necessary to prevent irreparable harm. Accordingly, without more, the Court declines Petitioner's invitation to impute the circumstances of other habeas petitioners facing third-country removal to show that he faces the threat of irreparable harm absent a court order here. (*See* dkt. # 8 at 9 and the cases cited therein.) Petitioner's request for injunctive relief related to possible third-country removal is denied. Nothing in this Court's order prevents Petitioner from seeking relief in the future, should it become necessary.

## IV.    CONCLUSION

Based on the foregoing, the Court ORDERS as follows:

(1)    Petitioner's petition for writ of habeas corpus (dkt. # 1) is GRANTED in part.

    (a)    Within **twenty-four (24) hours**, Respondents shall release Petitioner from immigration detention under conditions consistent with applicable statutory and regulatory authority; and

    (b)    Within **two (2) business days**, Respondents shall file a status report with the Court confirming Petitioner's release.

(2)    Petitioner's request for injunctive relief is DENIED without prejudice.

ORDER - 11

(3)     The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 19th day of May, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 12